IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Richard Ridley, | ) | |
| | ) | C/A No. 1:18-2398-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Correct Care, Timothy Budz, Jared | ) | **ORDER AND OPINION** |
| Anderson, and Captain G. Arnold, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Richard Ridley currently is committed to the custody of the Sexually Violent Predator Treatment Program (the "SVPTP") at the South Carolina Department of Mental Health (the "SCDMH") pursuant to the Sexually Violent Predator Act, S.C. Code Ann. §§ 44-48-10 through -170 (the "SVPA"). SCDMH and the South Carolina Department of Corrections ("SCDC") entered into an interagency agreement whereby SVPTP residents are housed at a security treatment facility within the Broad River Correctional Institution campus. On December 1, 2016, Correct Care of South Carolina, LLC ("CCSC") assumed operation of the SVPTP from the SCDMH.

Plaintiff, proceeding pro se, filed a complaint on August 29, 2018, asserting that Defendant CCSC and its employees, Defendants Timothy Budz, facility administrator; Jared Anderson, security director; and Captain G. Arnold, shift supervisor, violated his First, Second, Fourth, and Fourteenth Amendment rights, see 42 U.S.C. § 1983, as well as his rights under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq. ("RLUIPA"). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling.

## I. FACTS

Plaintiff asserts that he mailed a letter to another resident in the SVPTP via the United States Postal Service. Plaintiff alleges that his mail was retrieved and returned to him by Defendant Arnold with a charge for disobeying a direct order. Plaintiff contends that he was unaware of any rule prohibiting residents to correspond. A hearing was held, at which Defendant Anderson informed Plaintiff that a memorandum was in effect disallowing correspondence between residents. The charge against Plaintiff was dismissed. Plaintiff alleges that the memorandum presented by Defendant Anderson was backdated nearly a year earlier, but that "no one ever saw or heard of this[.]" ECF No. 1, 8. Plaintiff filed a grievance with Defendant Budz, which was denied. Plaintiff contends that these actions violated his First Amendment rights to free speech.

Plaintiff next asserts that he was charged with passing "something" to this same resident during a Bible studies class. Plaintiff contends that he was prohibited from attending any religious services from August 2, 2018 until August 22, 2018. Plaintiff states that this second charge also was dismissed. According to Plaintiff, he submitted a staff request as well as a grievance with respect to his purported denial of a reasonable opportunity to practice his religious rights, religious instruction, and communal worship without legitimate reason or cause during this time period, which request was denied.

Plaintiff next claims that Defendant Arnold served him with a no-contact order that precluded Plaintiff from associating with the resident with whom Plaintiff had attempted to correspond by mail and in the church service. Plaintiff alleges that Defendant Arnold violated Plaintiff's First Amendment rights in retaliation for Plaintiff's exercising of his right to freedom of religion. Plaintiff further contends that the no-contact order was obtained in violation of his due process rights under

the Fourteenth Amendment in that the no-contact order comprised punishment prior to a disciplinary hearing. Plaintiff states that he complained about Defendant Arnold's actions formally as well as by grievance to the Facility Administrator.

Finally, Plaintiff alleges that Defendants civilly conspired to deny him the ability to exercise his constitutional rights of freedom of speech, freedom of religion, as well as his rights under the RLUIPA.

Defendants filed a motion for summary judgment on March 18, 2019. Also on March 18, 2019, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Magistrate Judge advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately. Plaintiff filed a response in opposition on April 12, 2019, to which Defendants filed a reply on May 2, 2019. Plaintiff filed a surreply on May 13, 2019. Defendants filed a motion to strike the surreply on May 14, 2019. Plaintiff responded in opposition to Defendants' motion to strike on May 30, 2019.

The Magistrate Judge filed a Report and Recommendation on December 16, 2019, granting Defendants' motion to strike and recommending that Defendants' motion for summary judgment be granted. Plaintiff filed objections to the Report and Recommendation on January 2, 2020. Defendants filed a reply to Plaintiff's objections on January 13, 2020.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with

instructions. Id.

## II. DISCUSSION

"'Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" Matherly v. Andrews, 859 F.3d 264, 274 (4th Cir. 2017) (quoting Youngberg v. Romeo, 457 U.S. 307, 321–22 (1982)). "'[T]he confinement of mentally unstable individuals who present a danger to the public [is a] classic example of nonpunitive detention.'" Id. at 276 (quoting Kansas v. Hendricks, 521 U.S. 346, 363 (1997)). "'[A] particular restriction or condition, which may on its face appear to be punishment, [can] instead [be] but an incident of a legitimate nonpunitive governmental objective.'" Id. (quoting Bell v. Wolfish, 441 U.S. 520, 539 n.20 (1979)). "'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" Id. at 281 (quoting Turner v. Safley, 482 U.S. 78, 89 (1998)).

To determine whether a regulation is reasonably related to legitimate penological interests, the court must review

> (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there's an "absence of ready alternatives" to the regulation, which "is evidence of [its] reasonableness.

Id. (quoting Turner, 482 U.S. at, 89-90).

A.   Objection One - Motion to Strike

Plaintiff first contends that the Magistrate Judge erred in striking his surreply brief. The court

4

may reconsider any pretrial matter where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A).

Fed. R. Civ. P. 12(f) provides that a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. "'Rule 12(f) empowers courts to strike immaterial matter to promote judicial efficiency and avoid needless expenditure of time and money.'" County of Dorchestrer v. AT&T Corp., 407 F. Supp. 3d 561, 565 (D.S.C. 2019) (quoting Gibson v. Confie Ins. Grp. Holdings, Inc., No. 2:16-cv-02872-DCN, 2017 WL 2936219, at *12 (D.S.C. July 10, 2017)). "'[S]uch motions are to be granted infrequently, and are reviewed for abuse of discretion: 'decisions that are reasonable, that is, not arbitrary, will not be overturned.'" Id. (quoting Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 F. App'x 239, 246-47 (4th Cir. 2007)).

In this case, the Magistrate Judge noted in her Report and Recommendation that the Local Civil Rules make no provision for surreplies, and Plaintiff did not seek leave of the court to file a surreply. The Magistrate Judge further stated that, even had Plaintiff's surreply been considered, it would not have made a difference in her analysis of the case. Indeed, Plaintiff's surreply simply reiterates the allegations of his complaint and his response to Defendants' motion for summary judgment. The court finds no clear error in the Magistrate Judge's decision. The Magistrate Judge's granting of Defendants' motion to strike is affirmed.

B.   Objection Two - Factual Background

Plaintiff objects to the Magistrate Judge's finding that the SCDMH implemented a policy governing contraband in the SVPTP, effective December 17, 2008, and revised August 11, 2015, defining contraband to include "[a]ny materials that contain identifiable information about other

5

residents or any materials written by another resident." Plaintiff states that he was unaware of the policy and that residents were allowed to send letters to each other until his letter was retrieved from the mailbox by Defendant Arnold.

The Magistrate Judge observed that "[t]here is no indication on record that residents are provided this manual." ECF No. 48, 13 n.7. However, the Magistrate Judge determined that any disputes regarding the existence of the policy and whether Plaintiff had notice of the policy are without moment, because the policy itself did not offend the Constitution. The Magistrate Judge found that the mail policy preventing communication among residents served the nonpunitive administrative interests in protecting the public, protecting employees, and rehabilitating residents. See Affidavit of Timothy Budz, ECF No. 37-1, ¶¶ 19-23 (attesting that the mail policy is in place to prevent residents from developing inappropriate relationships that are counter to the resident's treatment target; prevent the distribution of treatment notes, coping logs, dynamic risk factors, and other treatment documents to other residents for the other residents to fill out on the resident's behalf or for a resident to use to "beat an evaluation"; prevent the continuation of counter-therapeutic relationships among residents; and prevent correspondence by residents that may incite other residents to disobey directives from staff members). The Magistrate Judge also found that the mail policy satisfied the remaining Turner factors. See Affidavit of Timothy Budz, ECF No. 37-1, ¶ 24 (stating that the restrictions apply to all residents at the facility in an effort to address the problems identified above without prohibiting residents from communicating with each other at all). See also Affidavit of Jared Anderson, ECF No. 37-2, ¶ 12 ("Residents are not allowed to pass items to other residents, including written correspondence, because it poses a major security threat to the facility. For example, residents correspond in codes or other enigmatic ways to hide criminal activity and

plots against staff.").

Plaintiff's contention that he was unaware of the mail policy does not call into question the validity of the mail policy. The Magistrate Judge properly determined that the mail policy did not violate Plaintiff's First Amendment rights. Plaintiff's objection is without merit.

C.      Objection Three - Burden of Proof

Plaintiff contends that the Magistrate Judge erred in "defending the defendants instead of adhering to the reason for granting summary judgment." ECF No. 50, 2. Plaintiff appears to contend that there are genuine issues of material fact that the Magistrate Judge disregarded in coming to her conclusions.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry in a summary judgment analysis is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Yerby v. City of Richmond, Civil Action No. 3:19-CV-394-HEH, 2020 WL 1052519, *2 (E.D. Va. March 4, 2020) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)). In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. Id. (citing Anderson, 477 U.S. at 255). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Id. at *3 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)). "'[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Id. (quoting Anderson, 477 U.S.

7

at 247–48).

In analyzing a motion for summary judgment, it is important to keep in mind that a material fact is one that might affect the outcome of a party's case. Id. (citing Anderson, 477 U.S. at 248). Whether a fact is considered to be "material" is determined by the substantive law, and "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Id. (quoting Anderson, 477 U.S. at 248).

Plaintiff points to "over 30 Exhibits and 12 Affidavits that clearly does support the facts in this matter." Id. at 3. Affidavits submitted on behalf of Plaintiff state that the mail policy was not posted until after Plaintiff was charged for mailing a letter to another resident. See, e.g., ECF No. 40-1,8; ECF No. 40-1, 10. For the reasons stated hereinabove, these statements are not material to whether or not Plaintiff was deprived of a constitutional right. As the Magistrate Judge properly determined, the mail policy at issue comprises a reasonable regulation pursuant to Turner. Plaintiff's objection is without merit.

D.  Objection Four - Jared Anderson Affidavit

Plaintiff contends that the Magistrate Judge erred in reviewing an affidavit prepared by Defendant Anderson. Plaintiff asserts that the affidavit is comprised of perjured testimony because of an inconsistency between the affidavit and his statement on a grievance submitted to the court for review by Plaintiff. Specifically, Defendant Anderson attests in support of summary judgment that the mail policy was in place prior to CCSC's involvement at the facility. ECF No. 37-2, ¶ 5. However, Defendant Anderson informed Plaintiff in response to the grievance that the mail policy under SCDMH allowed correspondence, but it was stopped on September 28, 2017. ECF No. 40-1, 1.

The Magistrate Judge correctly found that any inconsistency was not material to the resolution of Plaintiff's claims. The Magistrate Judge noted that the mail policy at issue does not offend the Constitution; therefore, the time of its implementation is not relevant. The Magistrate Judge further observed that Plaintiff was not punished for violating the mail policy rule. Plaintiff's objection is without merit.

E.  Objection Five - Reliance on Turner v. Safley, 482 U.S. 78 (1987)

Plaintiff contends that Turner does not apply to his complaint because Turner applied to mail being sent to different institutions by prisoners. Plaintiff notes that he is not a prisoner being held for any criminal type purpose.

In considering the constitutionality of the conditions of Plaintiff's confinement, he most closely resembles the custody status of a pre-trial detainee. Guess v. McGill, No. 9:13-cv-02260-TLW, 2014 WL 5106735, *7 (D.S.C. 2014). As such, disciplinary rules have been applied to civilly committed persons, such as Plaintiff, under the Fourteenth Amendment. See Hamm v. Jones, Civil Action No. 9:15-2552-RMG-BM, 2016 WL 11431328 (D.S.C. April 11, 2016). Due process requires that the conditions and duration of confinement under the SVPTP bear some reasonable relation to the purpose for which persons are committed. McClam v. Chavez, C.A. No. 3:05-cv-1795-RLW-JRM, 2006 WL 1663797, *2 (D.S.C. June 8, 2006) (citing cases).

In Matherly v. Andrews, 859 F.3d 264 (4th Cir. 2017), the Court of Appeals for the Fourth Circuit determined that the Turner factors apply to civil detainees in that

> a prison regulation impinging on a civil detainee's constitutional rights is valid if reasonably related to legitimate nonpunitive governmental interests. The four [Turner] factors which inform that reasonableness determination stay the same, save for the substitution of "civil detainees" for "prison inmates" in the second factor and "inmates" in the third factor.

9

Id. at 282.

Plaintiff also complains that the Magistrate Judge impermissibly shifted the burden of proof to him, in contravention of the summary judgment standard. To the contrary, when a moving party satisfies its initial burden of showing there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1968). Plaintiff's objections are without merit.

F.   Objection Six - RLUIPA

Plaintiff contends the Magistrate Judge erred in finding his rights under the First Amendment and the RLUIPA were not violated when he was prevented from attending religious services from August 2, 2018, to August 22, 2018. The RLUIPA provides, in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Under the RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b). If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of § section 2000cc, the government bears the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens

10

the plaintiff's exercise of religion. See 42 U.S.C. § 2000cc-2(b). Under the RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter v. Wilkinson, 544 U.S. 709, 723 (2005) (internal quotations omitted).

The free exercise inquiry under the First Amendment asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A "substantial burden" is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning the precepts of her religion on the other hand. Greenhill v. Clarke, 944 F.3d 243, 250 (4th Cir. 2019)(quoting Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006)). Once the inmate makes the requisite initial showing, the burden shifts to the government to show that the prison policy is the least restrictive means of furthering a compelling governmental interest. Id.

The Magistrate Judge determined that Plaintiff's temporary suspension from attending group religious services did not constitute a substantial burden on Plaintiff's free exercise of religion. The Magistrate Judge also applied the Turner factors to find that Plaintiff's passing "something" to another resident constituted a legitimate security concern. According to Defendant Budz, Plaintiff's conduct was viewed as counter-therapeutic and a security risk, because staff were unable to

11

determine whether the items passed were criminal in nature.[1] ECF No. 37-1, ¶ 38. The Magistrate Judge further observed that Plaintiff was not prohibited from any other means of worship.

The court agrees with the Magistrate Judge that Plaintiff's temporary suspension from communal worship did not place a substantial burden on his rights under either the RLUIPA and the First Amendment. Plaintiff's objections are without merit.

G.   Objection Seven - No-Contact Order

Plaintiff contends the Magistrate Judge erred in determining the no-contact order did not punish him.[2] Plaintiff asserts that "the restriction totally placed on the plaintiff was clearly A violation of Speech, Expression, Thought & Movement." ECF No. 50, 7. Plaintiff asserts that the no-contact order constituted punishment because any violation of the terms of the no-contact order would be referred to the Behavioral Management Committee for review.

The Magistrate Judge assumed for purposes of analysis that the no-contact order impinged Plaintiff's constitutional rights. The Magistrate Judge determined, however, that the no-contact order served a legitimate penological concern. The Magistrate Judge relied on Defendant Budz's statement that no-contact orders are enacted for a variety of reasons, including clinical or security reasons, rule infractions, altercations between residents, or other conduct that is not beneficial to the resident's treatment target. ECF No. 37-1, ¶ 31. Defendant Budz averred that the no-contact order

---

[1] Defendant Budz further contends that Plaintiff was not prohibited from attending all religious services, but those attended by the other resident with whom Plaintiff had been interacting. ECF No. 37-1, ¶ 37.

[2] Plaintiff also complains that the Magistrate Judge disregarded affidavits submitted in support of Plaintiff's position; improperly relied on Defendant Butz's affidavit; allowed Defendant Butz to speak on the actions of members of Plaintiff's treatment team; and improperly shifted the burden on summary judgment to him from Defendants. Plaintiff's objections in these matters are without merit. The Magistrate Judge properly applied the law as stated.

was necessary in this case upon staff observations of inappropriate conduct by Plaintiff with respect to another resident, to include sharing food, sending correspondence containing inappropriate content, passing contraband to the other resident, and passing items to the other resident during a religious service. Id. ¶ 36. The court concludes that the Magistrate Judge properly reviewed the Turner factors. Plaintiff's objection is without merit.

Plaintiff also contends that he was deprived due process because no hearing was held concerning the issuance of the no-contact order. The due process question presents two related but distinct inquiries: whether the no-contact order implicated a liberty interest triggering procedural due process requirements; and, if so, whether the procedures afforded Plaintiff satisfied those requirements. See Dilworth v. Adams, 841 F.3d 246, 250-51 (4th Circ. 2016). A court may infer an intent to punish if a restriction or condition is not reasonably related to some other legitimate goal. Id. at 252 (citing cases).

As the Magistrate Judge properly found, the no-contact order was not issued to punish Plaintiff, but to serve as a legitimate means of furthering Plaintiff's therapeutic goals and maintaining safety. The Magistrate Judge observed that Plaintiff remained in nonrestrictive confinement except for the denial of interaction with the other resident and that, in any event, Plaintiff's liberty interest was limited because of his civil commitment. Plaintiff's objections are without merit.

H.     Objection 8 - Civil Conspiracy

Plaintiff asserts that the Magistrate Judge erred in failing to take into account his evidence purportedly showing collusion among the Defendants. The elements a plaintiff must demonstrate in order to prove a civil conspiracy are (1) the combination of two or more people; (2) for the

13

purpose of injuring the plaintiff; and (3) which cause special damages. Pye v. Estate of Fox, 633 S.E.2d 505, 511 (S.C. 2006). However, a civil conspiracy cannot exist when the alleged acts arise in the context of a principal-agent relationship because by virtue of the relationship such acts do not involve separate entities. McMillan v. Oconee Mem. Hosp. Inc., 626 S.E.2d 884, 886-87 (S.C. 2006)(citing Perk v. Vector Resources Group, Ltd., 485 S.E.2d 140, 144 (Va. 1997)).

In this case, the Magistrate Judge recognized that the individual Defendants were employed by CCSC and acted in their official capacities in their dealings with Plaintiff. There is no evidence that any Defendant acted for any personal purpose. See id. at 887 (citing 16 Am. Jur. 2d Conspiracy § 56 (2005)). Plaintiff's objections are without merit.

I.      Objection 9 - Retaliation

Plaintiff argues that the Magistrate Judge erred in determining Plaintiff failed to show Defendant Arnold retaliated against him for exercising a protected First Amendment activity. To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005). (citing Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000)).

The Magistrate Judge properly found that Plaintiff provided no facts tending to support a finding that Defendant Arnold placed restrictions on Plaintiff in response to Plaintiff's engaging in First Amendment activity. In other words, Plaintiff failed to establish a causal connection between the protected activity and Defendant Arnold's conduct. Plaintiff's objection is without merit.

J.   Objection 10- Other Issues

Plaintiff contends that the Magistrate Judge erred in failing to address his claim of harassment by Defendant Arnold. Plaintiff filed a supplement to his complaint on January 7, 2019 Plaintiff alleges he had been informed by a CCSC officer that Defendant Arnold was targeting and harassing Plaintiff for previous grievances and complaints made about CCSC staff and management. ECF No. 30. Defendant Budz attests that he investigated Plaintiff's complaint and found the allegations to be unsubstantiated. ECF No. 37-1, ¶ 39. Plaintiff's mere allegation is insufficient to overcome Defendants' motion for summary judgment. Any remaining objections raised by Plaintiff also are without merit.

### III.  CONCLUSION

The court concurs in the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. Defendants' motion for summary judgment (ECF No. 37) is **granted**. The Magistrate Judge's granting of the motion to strike (ECF No. 46) is **affirmed**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour  
Senior United States District Judge

Columbia, South Carolina

March 11, 2020